## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DCP MIDSTREAM, L.P.,
    a Delaware Limited Partnership,

    Plaintiff,

v.                                                           CV 05-1342 WPL/RLP

GANDY CORPORATION,
    a New Mexico Corporation,

    Defendant;

consolidated with

GANDY CORPORATION,
    a New Mexico Corporation,

    Plaintiff,

v.                                                           CV 06-318 WPL/CEG

DCP MIDSTREAM, L.P.,
    a Delaware Limited Partnership, and
ALL UNKNOWN CLAIMANTS,

    Defendants.

## DECISION

    I have considered the evidence presented on April 9 - 12, 2007, together with the stipulated facts set out in the Pretrial Order, the Proposed Findings of Fact and Conclusions of Law and trial briefs submitted by the parties, and enter the following Findings of Fact and Conclusions of Law to resolve all issues presented by the parties:

**FINDINGS OF FACT**

1.      DCP Midstream, L.P.[1] operates a natural gas gathering and transportation system that includes facilities in southeast New Mexico. Gandy Corporation provided services to DCP under Master Service Agreements (MSAs) executed in 1994 and 2004.  One of the services that Gandy provided was to haul liquid hydrocarbons (slop oil) by truck from DCP's pipeline system.

2.      In 2005 DCP began to examine the invoices it had received from Gandy for slop oil hauling services. Although DCP supervisors had previously approved payment of the invoices and DCP had paid them, DCP became concerned that it had been overcharged by Gandy for slop oil hauling services, and hired Rick Kaiser to investigate Gandy's billing practices.

3.      Mr. Kaiser reviewed documents provided by Gandy, and estimated that Gandy had overcharged DCP by $913,000. When the parties were not able to resolve this dispute, DCP began to withhold payment on invoices submitted by Gandy. DCP has refused to pay $899,531 in invoices submitted by Gandy from May of 2005 to January of 2006. Of that amount, $405,000 is for slop oil hauling services.

4.      In these consolidated cases, DCP sued Gandy for breach of contract, fraud and violations of the New Mexico Unfair Practices Act, while Gandy sued DCP for breach of contract, debt and money due, malicious abuse of process and violations of the New Mexico Unfair Practices Act, and to foreclose oil and gas liens. Both parties have asserted claims for compensatory damages, punitive damages and attorney's fees.

5.      Several issues have been resolved by prior rulings or by agreement of the parties.

---

[1] DCP Midstream was previously known as Duke Energy Field Services, L.P. In 2000 Duke Energy Field Services, L.P. succeeded to the rights and interests of GPM Gas Corporation. All three companies will be referred to in this Decision as DCP.

First, applying the choice-of-law provisions in the MSAs, I ruled that Oklahoma law governs the 1994 MSA, while Colorado law governs the 2004 MSA, and granted summary judgment on DCP's claim that Gandy violated the New Mexico Unfair Practices Act. (Doc. 94 at 4-5.)[2] Second, applying the limitation of liability clauses in the MSAs, I granted DCP's motion for partial summary judgment on Gandy's claim for consequential damages. (Doc. 99.) Third, I denied Gandy's *Daubert* motion to exclude the testimony of DCP's expert, Ron Miller, a certified public accountant, because it is based on an inadequate or faulty basis, and took under advisement the claims that his testimony should be excluded because his method of sampling is contrary to professional standards and his opinion is unreliable because it keeps changing. (Doc. 96 at 6-8.) Fourth, I denied Gandy's claim that DCP's damages were limited by the contractual provision that allowed DCP to audit Gandy within two years of the completion of the work under the MSAs. (Doc. 122.) Fifth, the parties stipulated at the Pre-Trial Conference that Gandy's action to foreclose oil and gas liens was withdrawn.

6. The 1994 and 2004 MSAs require Gandy to bill DCP for the hours actually worked by Gandy's drivers while they are transporting slop oil. The Rate Sheet attached to the 2004 MSA allowed a two hour minimum charge to Gandy for all labor and equipment.

7. Instead of billing DCP by the hour, Gandy billed DCP under a "flat rate" or "bid rate" system that did not reflect the hours actually worked by Gandy's drivers while transporting slop oil and that inflated the bills to DCP.

8. Determining the amount of overcharge was not an easy task, as Gandy's records (*i.e.*,

---

[2] Although not discussed in that Order, the New Mexico Unfair Practices Act does not apply because the choice of law provisions in the MSAs are broad enough to cover those claims and the claims involve the same operative facts as the breach of contract claim. *See Cobank, ACB v. Reorganized Farmers Coop. Ass'n*, 170 F. App'x 559, 567 (10th Cir. 2006).

work tickets, invoices and Driver Duty Status Records) were voluminous, incomplete and sometimes contradictory. Ron Miller randomly selected 15% of Gandy's records for a 45-month period to analyze. He reviewed the MSAs, a database prepared by Rick Kaiser, reports prepared by Ken Bogle, and records from DCP's Supervisory Control and Data Acquisition system, together with certain depositions taken in this case. He also took a field trip to several booster stations and to the Eunice Oil Center to attempt to understand the processes, procedures and time frames for a Gandy driver to pick up and deliver slop oil in the oil field.

9. The methodology employed by Ron Miller in computing damages is scientifically valid and can be applied to the facts of this case. His extrapolation of damages from his sample of 45 months is justified and he employed the same level of intellectual rigor in the courtroom that characterizes the practice of an expert in accounting.

10. Ron Miller initially estimated that Gandy had overcharged DCP by 22.89%, or the sum of $796,550, for hauling slop oil from October 2000 to December 2005. After receiving additional information, Miller prepared a supplemental report that utilized three alternative methodologies for determining damages. Miller estimated that, under the first methodology, Gandy had overcharged DCP by 14.27%, or the sum of $496,582; that under the second methodology, Gandy had overcharged DCP by 14.39%, or the sum of $500,758; and that under the third methodology, Gandy had overcharged DCP by 14.52%, or the sum of $505,282, for slop oil hauling.

11. Gandy breached the MSAs by failing to bill DCP for the hours its drivers actually worked when hauling slop oil. Gandy overbilled DCP by 14.52%, or $505,282, by billing under a "flat rate" or "bid rate" system. DCP is entitled to pre-judgment interest of $144,629 on this amount.

12. DCP failed to establish the essential elements of its claim for fraud by clear and

...

convincing evidence.

13. In September of 2005 Gandy increased its rates for services provided under the 2004 MSA, and notified DCP in writing of the increase. DCP did not respond, either orally or in writing, to this notification. This silence lead Gandy to believe, based on prior conduct between the parties when Gandy had increased its rates under the MSAs, that DCP did not contest Gandy's increased rates. Although the 2004 MSA provides that any amendment to the MSA must be in writing, DCP is equitably estopped from challenging Gandy's rate increase.

14. Paragraph 6 of the MSAs sets out the procedure for Gandy to present invoices for payment and for DCP to pay them. If DCP disputes part or all of an invoice, Paragraph 6(c) requires DCP to notify Gandy of the dispute, pay the undisputed part of the invoice, and attempt to resolve the dispute with Gandy. Paragraph 6(d) allows DCP to set off against payments due Gandy "any amount due and owing" DCP by Gandy for any reason. Paragraph 6(f) gives DCP the right to file a claim to recover any sums paid to Gandy by mistake. DCP relies upon Paragraph 6(d) as authority for its decision to withhold payment of invoices totaling $899,531 to Gandy.

15. DCP improperly withheld payment to Gandy under Paragraph 6(d). The MSAs were drafted by DCP, and any ambiguities in them must be construed against it. The Sixth Circuit, in determining the meaning of the word "due" in a bankruptcy statute, stated that the word "has two possible meanings—'matured and payable' or 'owing'—and is inherently ambiguous." *In re Vause*, 886 F.2d 794, 796 (6th Cir. 1989); see also BLACK'S LAW DICTIONARY 538 (8th ed. 2004) (defining "due" as "[i]mmediately enforceable" or "[o]wing or payable.") The Tenth Circuit stated in a tax case that the word "due" "may mean that the debt or obligation to which it is applied has become immediately payable, or it may mean that the debt has become ascertained and fixed, although payable in the future." *Furrow v. Comm'r*, 292 F.2d 604, 606-07 (10th Cir. 1961).

16. DCP withheld payments to Gandy based on its unilateral determination of the amount of the overcharges. The MSAs do not allow DCP to do so. Gandy's debt was not liquidated, and it was not ascertained and fixed when DCP withheld payments. Gandy is entitled to recover $494,531 for its non-slop oil hauling services. To account for overbilling on the slop oil hauling, Gandy is entitled to recover $346,194 (85.48% x $405,000) for slop oil hauling services.

17. DCP conducted a reasonable investigation of Gandy's billing practices, and reasonably believed that Gandy had overbilled it, before it filed suit. In addition, DCP's claim that Gandy violated the New Mexico Unfair Practices Act, although ultimately unsuccessful, was not groundless.

18. Because both parties breached the MSAs, neither party is entitled to recover attorney's fees in this case. In addition, both parties shall bear their own costs incurred.

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

2. Gandy's remaining challenges to Ron Miller's testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) are denied.

3. Gandy breached the MSAs by billing DCP under a "flat rate" or "bid rate" that did not reflect the hours actually worked by Gandy's drivers while transporting slop oil. Gandy overbilled DCP by 14.52%, or $505,282. DCP is entitled to pre-judgment interest of $144,629 on this amount, and post-judgment interest as allowed by law.

4. DCP failed to establish its claim for fraud.

5. DCP breached the MSAs by withholding payment to Gandy under Paragraph 6(d) of the 2004 MSA. DCP owes Gandy $840,725 on this claim. Gandy is entitled to pre-judgment and

post-judgment interest on this amount. The parties agree that pre-judgment interest should be calculated at the rate of 8% per annum pursuant to section 5-12-102 of the Colorado Revised Statutes.

6. Because Gandy seeks the same damages under its claims for breach of contract and for debt and money due, it is not necessary to reach the claim for debt and money due.

7. Gandy cannot recover for malicious abuse of process and cannot recover attorney's fees under the Unfair Practices Act.

8. Neither party is entitled to recover attorney's fees, and both parties shall bear their own costs incurred.

9. All Findings of Fact and Conclusions of Law that are not contained in or consistent with this Decision are refused.

*[Signature: William P. Lynch]*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.